UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE LORRAINE TEDROW,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKZI,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 21-cv-01969-NLS<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT.**<br><br>**(3) AFFIRMING THE DECISION OF THE COMMISSIONER**<br><br>**(4) DISMISSING THIS ACTION WITH PREJUDICE**<br><br>**[ECF No. 19]** |

Plaintiff Antoinette Lorraine Tedrow ("Plaintiff") brings this action under Title XVI of the Social Security Act seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for

supplemental security income based on disability. Plaintiff filed a motion for summary judgment, Defendant filed an opposition and cross motion for summary judgment, and Plaintiff filed a submission in lieu of a reply.  ECF Nos. 12, 16, and 17.

After considering the parties' submissions, the administrative record, and the applicable law, for the reasons stated below, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** the Commissioner's cross-motion for summary judgment, **AFFIRMS** the decision of the Commissioner and **DISMISSES** this action with prejudice.[1]

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Title XVI supplemental security income based on alleged disability beginning on January 1, 2018.  ECF No. 11 ("AR") 224-235.  The Commissioner denied the claim initially on April 2, 2019, AR 92-99, and upon reconsideration on May 24, 2019.  AR 100-111.  On June 12, 2019, Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ").  AR 123-130.  The ALJ conducted two oral hearings, the first on May 15, 2020, AR 48-55, and a second supplemental hearing on December 8, 2020.  AR 56-91.  At the first hearing, Plaintiff was not represented by counsel and there were records missing, so the ALJ postponed her hearing and recommended she retain counsel and supplement the record.  AR 53-54.  At the second hearing, Plaintiff was represented by counsel.  AR 58.  An impartial vocational expert ("VE") was also present.  *Id*.  On March 12, 2021, the ALJ issued an unfavorable decision denying Plaintiff's request for disability benefits. AR 31-47.

On May 3, 2021, Plaintiff requested review of the ALJ's decision.  AR 222-223.  The Appeals Counsel denied Plaintiff's request for review on September 20, 2021.  AR 1-6.  On that date, the ALJ's decision became the final decision of the Commissioner, 42 U.S.C. § 405(h).  Plaintiff timely commenced this action in federal court.

---

[1] The parties have expressly consented that all proceedings in this case may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 646c; Fed. R. Civ. P. 73; ECF No. 5.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520.[2]

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 28, 2018, the Application date. AR 33.

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; asthma; COPD; hypothyroidism; post thyroidectomy; depression; and anxiety. AR 33.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 34.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 416.967(a), with certain additional limitations. AR 35. Those limitations included:

> Plaintiff could occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel crouch, or crawl; no work at unprotected heights or adjacent to dangerous moving machinery; no concentrated exposure to humidity, wetness, extreme cold, extreme heat or to dust, odors, fumes or pulmonary irritants; limited to work involving simple routine tasks, occasional interactions with supervisors or coworkers and no public interaction; requires habitual and stable work environment in which any changes in work routine are introduced gradually. AR 35.

At step four, the ALJ considered and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would not be able to perform the requirements of Plaintiff's past relevant work as a home health aide or

---

[2] Unless otherwise indicated, all references in this Order to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.
[3] RFC is the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

security guard. Accordingly, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 40.

The ALJ then proceeded to step five of the sequential evaluation process. He determined that Plaintiff could not perform any of her past relevant work as a home health aide (D.O.T. code 354.377-014 medium exertion, SVP 3) or security guard (D.O.T. code 372.667-038, light exertion, SVP 3) because the demands of those jobs exceeded her residual functional capacity.

But based on the VE's testimony, the ALJ determined that a hypothetical person with plaintiff's age,[4] education (high school), work experience,[5] and RFC could perform certain representative light occupations that existed in significant numbers in the national economy such as assembler (D.O.T. 729.687-010), marker (D.O.T. 209.587-034), office helper, (D.O.T. 239.567-010), as well as certain sedentary occupations that existed in significant numbers such as final assembler (D.O.T. 713.687-018), touch up screener (D.O.T. 726.684-110), jewel stringer (D.O.T.770.687-026), and document preparer (D.O.T. 249.587-018). Therefore, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act, from her alleged onset date of September 28, 2018, through the date of the decision. AR 41.

## STATEMENT OF FACTS

The parties stipulated that the ALJ fairly summarized the medical and non-medical evidence of record, except as specifically noted in their briefs. ECF 12 at 4, ECF 16 at 2.

## PLAINTIFF'S CLAIMS OF ERROR

Plaintiff claims the ALJ committed reversible error in two respects:

1. The ALJ erred in determining Plaintiff did not have an impairment that meets or medically equals the listing for asthma. AR 34, ECF 12 at 4-7.

2. The ALJ erred by failing to give clear and convincing reasons for discounting

---

[4] Plaintiff was 38 years old at the time of the administrative hearing, a younger individual for Social Security Disability purposes. AR 40 ¶ 6; 20 C.F.R. 416.964.
[5] The ALJ treated transferability of work skills as immaterial. AR 40 at ¶ 8.

4

Plaintiff's subjective symptom testimony.  ECF 12 at 9-12.

## STANDARD OF REVIEW

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  A reviewing court will set aside a denial of benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (*quoting Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).  Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *see Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quotation and citation omitted).  It is a "highly deferential" standard of review.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  However, the Court must consider the entire record, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and it "may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F3d. 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Vasquez v. Astrue*, 547 F.3d 1101, 1104 (9th Cir. 2008) (internal quotations and citation omitted).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Molina*, 674 F.3d at 1111.  It is not the Court's role to reinterpret or re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff.  *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Moreover, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ.  *Molina*, 674 F.3d at 1121.

//

# DISCUSSION

## A. The Medical Evidence Supports the ALJ's Finding at Step Three that Plaintiff Did Not Meet Medical Listing 3.03 for Asthma.

At step three of the sequential evaluation process, Plaintiff has the burden to prove that she has a medical condition that meets or equals a listing, i.e., a condition that is so severe it is *per se* disabling. *See* 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimant bears the burden of proving she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations).

Plaintiff contends that as of January 13, 2021, she met medical Listing 3.03 for severe asthma. ECF 12 at 4. To meet a medical listing, Plaintiff's medical findings (i.e., symptoms, signs, and laboratory findings) must match all the criteria described in the listing. *See* 20 C.F.R. § 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (mere diagnosis of an impairment found in one of the listings is not enough to sustain a finding of disability, instead, all the findings shown in the listing must also be present).

To meet Listing § 3.03 for asthma, the requirements of both section A and section B must be met. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 3.03.

Section A states:

> A. $FEV_1$[6] (see 3.00E1) less than or equal to the value in Table VI-A or VI-B for your age, gender, and height without shoes (see 3.0E3a) measured within the same 12-month period as the hospitalizations in 3.03B.

---

[6] Section 3.00E1 states in relevant part "Spirometry, which measures how well you move air into and out of your lungs, involves at least three forced expiratory maneuvers during the same test session. A forced expiratory maneuver is a maximum inhalation followed by a forced maximum exhalation, and measures exhaled volumes of air over time. The volume of air you exhale in the first second of the forced expiratory maneuver is the $FEV_1$. The total volume of air that you exhale during the entire forced expiratory maneuver is the FVC. **We use your highest $FEV_1$ value** to evaluate your respiratory disorder under 3.02A, 3.03A, and 3.04A." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00 E1 (emphasis added).

According to Table VI-A of Listing 3.03A, a woman over the age of 20 who is less than 67 inches tall meets the listing for asthma when she has a $FEV_1$ equal to or less than 1.75. Plaintiff is 66 inches tall (AR 742), female, over 20 years old, and consequently an $FEV_1$ level less than or equal to 1.75 is required to meet Listing 3.03(A).

The medical record contains two spirometry tests from the period between April 29, 2019, and January 13, 2021. AR 474, 742. At step three of the sequential process the ALJ explicitly stated the spirometry results did not demonstrate the specified criteria required to meet the listing for asthma. AR 34. He noted Plaintiff's spirometry results on April 29, 2019, showed $FEV_1$ levels of 1.94, 1.97, and 2.07, on trials 1, 2, and 3, respectively, AR 474. On January 31, 2021, Plaintiff's spirometry results showed $FEV_1$ levels of 1.72 and 2.17 AR 742. The ALJ concluded that Plaintiff's highest $FEV_1$ levels on each of the testing dates—2.07 on April 19, 2019, and 2.17 on January 13, 2021—failed to satisfy the criteria of Listing 3.03A. The ALJ's discussion of Plaintiff's spirometry results constitutes sufficient analysis for his step three finding. *See Gonzalez v. Sullivan*, 914 F.2d 1197-1200-1201 (9th Cir. 1990) *Lewis v. Apfel,* 236 F.3d 503, 513-14 (9th Cir. 2001).

Nevertheless, Plaintiff argues that her January 2021 spirometry testing showed an $FEV_1$ score of 1.72*,[7] a value that equals Listing level severity. ECF 12 at 6. She contends that the ALJ either did not see that score or chose not to include it. *Id.* But, as pointed out by the Commissioner, the applicable regulation states in relevant part "[w]e use your highest $FEV_1$ value to evaluate your respiratory disorder under . . . [Listing] 3.03A." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00E1. The highest $FEV_1$ level at the January 21, 2021, testing was 2.17. AR 742. That was the same finding noted by the ALJ in concluding the requirements of Listing 3.03(A) were not met. Since the 1.72 score was not the highest $FEV_1$ level on that day, the ALJ was under no obligation to explicitly recognize it.

---

[7] * Is defined in the report as indicating a value outside the normal range or significant post change. AR 742.

Additionally, Plaintiff submits she satisfied the requirements of Listing 3.03(B) by referencing her multiple hospital visits that appear in the record. ECF 12 at 6-7.

Listing 3.03(B) states:

> Exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart (the 12-month period must occur within the period we are considering in connection with your application or continuing disability review). Each hospitalization must last at least 48 hours, including hours in hospital emergency department immediately before hospitalization. Consider under a disability for 1 year from the discharge date of the last hospitalization; after that evaluate the residual impairment(s) under 3.03 or another appropriate listing.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03(B).

Plaintiff's hospital visits do not satisfy the criteria of § 3.03(B). None of the hospital visits cited by Plaintiff (July 23, 2018, July 23, 2018, September 1, 2018, October 16, 2018, and October 24-27, 2018), AR 410, 401, 403, 442, occurred during the same 12-month period as the January 2021 $FEV_1$ test Plaintiff relies on as the regulation requires. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03A (requiring the $FEV_1$ value meeting the limit in the table to be "measured within the same 12-month period as the hospitalizations in 3.03B"). Accordingly, Plaintiff failed to meet the requirements of both Section A and B, so ALJ did not err in determining that Plaintiff did not meet Listing 3.03 for asthma.

Plaintiff alternatively argues that while she may not have met the exact criteria of Listing 3.03 for asthma, her impairments were "medically equivalent" to the Listing. ECF 12 at 7-9. She cites her January 13, 2021, spirometry score of 1.72 as evidence of "equivalency" that the ALJ should have addressed. ECF 12 at 7-8. She contends the ALJ should have had a doctor review that specific score for "equivalency," rather than "acting as his own medical expert." ECF 12 at 9.

"At the third step of the sequential evaluation, a claimant's impairment or combination of impairments is medically equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or

combination of impairments 'is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926 (a).'" *Sheryl P. v. Saul*, No. SA CV 20-00525-RAO, 2020 WL 6892880, at *2 (C.D. Cal. Nov. 24, 2020) (citing *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013)). To establish "equivalency," Plaintiff must present medical findings equal in severity and duration to the criteria of a listed impairment. *Id.* She cannot just rely on "overall functional impact." *Id.*

In *Sheryl P.*, Plaintiff argued that the ALJ erred in failing to consider her other impairments (e.g., obesity, hypertension, diabetes) in determining she did not meet the medical Listing for chronic obstructive pulmonary disease (COPD) even though her $FEV_1$ scores did not meet the requirements of Listing 3.02 for COPD, 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 §3.02A. There the court stated,

> Plaintiff has not presented medical findings that are "equal in severity" to the criterion for Listing 3.02A, which is concerned only with the volume of air than an individual with COPD can expire in one second. Although her claim might be construed as an argument that her other impairments cumulatively would contribute to a lower $FEV_1$ value, Plaintiff has filed to show or explain why the $FEV_1$ measurements do not themselves capture the limitations that arise from asthma, lung function, and obesity.

*Sheryl P.,* 2020 WL 6892880 *2.

Here, as in *Sheryl P.*, Plaintiff has not presented medical findings that are "equal in severity" to the criterion for Listing 3.03A which is similarly only concerned with the volume of air that a person with asthma can expire in the first second of a forced expiration ($FEV_1$). While she did have a score of 1.72 on January 13, 2021, at that same test session she had a score of 2.17, and the agency looks only to the "highest" $FEV_1$ when determining whether a claimant meets Listing 3.30(A). Additionally, Plaintiff did not submit medical evidence beyond the $FEV_1$ of 1.72 in arguing "equivalency." As the court observed in *Sheryl P.*, she might have argued that her other impairments cumulatively would contribute to lower $FEV_1$ values, but she did not attempt to show why her $FEV_1$ scores themselves do not capture the limitations that arise from her

obesity, COPD, hypothyroidism; depression; and anxiety. *Sheryl P.,* 2020 WL 6892880 *2.

As the Ninth Circuit pointed out in *Kennedy*, the listed impairments are deliberately set at a high level of severity because they function as a presumption of disability that makes further inquiry unnecessary. *Kennedy*, 738 F.3d at 1176 (quoting *Zebley*, 493 U.S. at 532)). Furthermore, the Ninth Circuit pointed out in *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.* Here, Plaintiff failed to present medical evidence of "equivalency," so the ALJ was not obliged to further discuss the issue. The ALJ properly applied the Listing 3.03 for asthma, and specifically found that Plaintiff's impairments did not meet "or equal" the severity of a listed impairment. AR 34. He carried out his obligation to discuss and evaluate the evidence and reached a conclusion that is his alone to make. 20 C.F.R. § 416.927(d), (2), (3).

**B. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptom Testimony.**

Plaintiff claims the ALJ erred in discounting her subjective symptom testimony regarding the limitations imposed by her alleged mental impairments. ECF 12 at 9-12. The Commissioner contends the ALJ properly applied the two-step process in considering Plaintiff's alleged mental impairments and made findings that are properly supported by the record. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2001) (*citing Bunnel v Sullivan*, 947 F.2d 341-345-46 (9th Cir. 1991)).

Both the Act and the regulations prohibit granting disability benefits based solely on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). As one court observed, the ALJ "is not

required to believe every allegation of disabling pain (or other symptoms), or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The Ninth Circuit has established a two-step process to determine whether a claimant's testimony about pain or other subjective symptoms is credible. *Kramer v. Kijakazi*, Case No. 20cv2065-GPC (AHG), 2022 WL 873630 *11 (S.D. Cal. March 24, 2022) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007)). First, the ALJ must determine whether the claimant provided objective evidence of an impairment or impairments that could reasonably be expected to produce the alleged pain or symptoms. *Id.* at 1036. Second, if the first factor is met, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which those symptoms limit [her] ability to perform work-related activities." Soc. Sec. Ruling (SSR) 16-3p. In determining the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id*.

If the first factor is met and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Kramer*, 2022 WL 873630 at *11 (citing *Lingenfelter*, 504 F.3d at 1035-36). "While subjective pain testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is nevertheless a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.* (quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility determination such as considering inconsistencies in the claimant's testimony or between her testimony and her conduct or daily activities inconsistent with the alleged symptoms. *Id.* (citing *Molina v. Astrue*, 674

F.3d 1104, 1111 (9th Cir. 2012)).

Following the two-step process, the ALJ determined first that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms (*e.g.,* panic attacks, fear of an asthma attack, fear of getting sick). AR 35-36. Having satisfied the first step of the process, the ALJ next found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 37-39.

### 1. Plaintiff's Subjective Symptom Testimony

At the hearing on December 8, 2020, Plaintiff testified that she lives with her husband and 22-year-old son in Lemon Grove, California. AR 22, 36. Both her husband and her son are employed. AR 64. The ALJ noted that when Plaintiff filed her claim initially, she was alleging disability based on asthma, high blood pressure and problems with her legs. *Id.* The ALJ observed she later claimed to have significant mental health issues she did not have when she first filed her claim. *Id.* When asked, Plaintiff testified she developed the mental health problems after her grandmother died in January 2018. *Id.*

Plaintiff testified that her most recent job was as a residential specialist in a home for mentally disabled people. AR 36, 64-65. She worked there for approximately two years. *Id.* Her responsibilities in that job included preparing meals for the residents, bathing them, changing their briefs, cleaning the house, giving them their medications, and taking them on outings. *Id.* During her shift, there was usually a second helper except for the last four hours of the day when she was on her own with six residents. AR 65. She stopped working in that job because of her health issues. AR 65-66.

Plaintiff reported she has developed asthma when she was a little girl, but it stopped during her teenage years, and then came back with a vengeance in her 30s. AR 66. In the past she worked various jobs (e.g., cage cashier at a casino, gas station attendant, security guard, and residential care) despite her asthma, but then the asthma

became uncontrolled, and she was diagnosed with COPD (chronic obstructive pulmonary disease) on top of the asthma. AR 67. At the time of the hearing, she has only seen her new pulmonologist, Dr. Al Nassar, one time and he ordered further testing, including a spirometry test.[8] *Id.* Dr. Nasser has her on a "rescue inhaler" and two preventative inhalers as well as medication and a nebulizer. AR 69.[9]

Plaintiff testified that she could drive in an emergency but does not want to take the risk of an attack. AR 69. She was hospitalized with asthma for several days on multiple occasions in 2019. AR 69-70. Although she had not been hospitalized in 2020, her asthma symptoms were not fully controlled by her medications which is why she sought further care from a pulmonologist. AR 71-71.

In terms of her mental health, Plaintiff testified she was hospitalized at Sharp Mesa Vista Hospital in October 2019 because she was depressed and having suicidal thoughts. AR 72. That was the only time she was hospitalized for mental health issues. *Id.* She is on several medications for depression and anxiety, including Abilify, Cymbalta, and Trazodone. AR 72. She has a new psychiatrist with whom she consults via teleconference. AR 73.

In terms of her daily activities, Plaintiff testified that her husband and son do all the cooking, cleaning, and laundry. AR 74. She sits on the bed and folds the laundry, but her husband puts it away. *Id.* She sometimes watches TV or sits in a chair, but she is otherwise bed-bound. *Id.* The ALJ noted that in her prior job as a residential care specialist she could lift to 100 pounds occasionally and 50 pounds frequently. She prepared meals and assisted the residential patients with grooming, showering, medications, laundry, and cleaning the home. AR 75. Plaintiff could not explain the sudden decline in her health other than "it just came on" and she declined mentally and

---

[8] The ALJ kept the record open for 45 days following the hearing so he could receive the test results. AR 68.

[9] A "nebulizer" changes medication from a liquid into a mist so it can be inhaled into the lungs. They are used with corticosteroids and bronchodilators to control asthma symptoms. https://www.webmd.com/asthma/guide/home-nebulizer-therapy.

physically. AR 75.

When questioned by her attorney about the last few months she was on the job at the residential home, she testified that her job performance declined. AR 76. She would clean the dishes while sitting in a chair, and her employer hired a male specialist who did all the heavy lifting. AR 76. Plaintiff says she continued to fold laundry while sitting on the sofa and dispense the medications, so she did not have to do any of the physical activity with the residents. *Id*. When she began her employment at the residential home, she did have a few asthma attacks, but it got worse over time. *Id*. She believes being around chemicals and germs aggravated her asthma. *Id.*

She did have several visits to the ER in 2019. AR 77. She did not always go when she should have, but the times she did go, her lips were turning blue, and she was almost passing out due to lack of oxygen. *Id*. When asked why her visits to the ER stopped in 2020, she testified that there were times when she should have gone, but she decided that the treatments there were like what she could do at home, so she just decided to treat herself. AR 78. Sometimes she must do two treatments in a row. *Id.* She has done up to five treatments in an eight-hour day. *Id.* It takes from five to ten minutes after she puts the solution in the nebulizer for a treatment to be complete. AR 79. Then she will lie down in bed until she feels she can get up. *Id.*

In terms of her morning routine, Plaintiff testified that she only bathes every four to five days. AR 80. Her husband comes in to check on her, but she can wash herself and brush her hair. *Id.* He is just there to make sure she can breathe and that she is not having an episode which prevents her from going to the bed to take a treatment. AR 81.

Regarding her mental health symptoms Plaintiff testified that she has panic attacks when she goes out. AR 81. She is afraid of getting sick or being around someone who is contagious or just having a bad breathing episode while she is away from home. *Id.* The furthest she usually goes is the front porch. *Id.* There are times when her depression gets bad. AR 82. She has even hurt herself physically and mentally. *Id.* She just loses hope in wanting to live. *Id.* She gets these severe episodes three or four times in seven days.

*Id.* They usually last several days up to a week. AR 83.

On questioning by the ALJ, Plaintiff testified that she did not have absences from work for mental health reasons when she worked her prior jobs as a security guard or home health specialist. AR 83. She testified that her mental health issues began after her grandmother died and after she stopped working. *Id.*

### 2. The ALJ's Evaluation of Plaintiff's Symptoms

In this decision, the ALJ separately evaluated whether Plaintiff's mental impairments, physical impairment, and obesity supported her subjective testimony.

First, as to mental impairments, the ALJ found at step two that Plaintiff did not have severe mental impairments of anxiety and depression. AR 33. However, he determined these mental impairments were not disabling functional limitations. AR 38. The ALJ noted that on October 1, 2019, Plaintiff was admitted on a voluntary basis to Sharp Mesa Vista Hospital due to reported suicidal ideation. AR 38, 623. She was seen at Sharp by psychiatrist, Syed Jafar, M.D. AR 626-634. At the time of her admission, she was tearful and depressed. AR 626. She denied any auditory or visual hallucinations, or paranoid delusions. AR 627. In a mental status examination, Dr. Jafar noted her affect to be congruent with a depressed mood. AR 38, 628. She was alert, oriented as to time, place and person. AR 628. Her attention and concentration were intact as evidenced by her ability to repeat serial numbers forward and backward without error. AR 627. Her ability to calculate was similarly intact as evidenced by her ability to recite serial subtraction of 7 from 100 onwards. AR 628. Her memory and abstract reasoning were intact. AR 628. Although her insight into her illness was poor, she showed good impulse control in that she did not act on her suicidal thoughts. AR 628. Dr. Jafar diagnosed Plaintiff with major depressive disorder, chronic, recurrent, and severe without psychosis. AR 629. She was started on various psychiatric medications (Seroquel, Trazadone, and Lexapro), continued to improve, and on October 3, 2019, Plaintiff was medically stable and discharged home with her husband. AR 624, 630.

On August 12, 2020, Plaintiff presented to Family Health Centers of San Diego for

a crisis intervention regarding alleged self-harm behaviors. AR 38, 644. The treatment records indicate Plaintiff reported daily depressive symptoms and uncontrollable worry about multiple issues along with a panic attack two days prior. AR 38, 644. Psychologist Lynda Ariella, Ph.D., performed a mental health examination. AR 38, 647-48. She found Plaintiff was alert, oriented as to person, place, time and situation. AR 647. Her speech was normal, her thought process coherent, and her behavior cooperative. AR 647. Dr. Ariella determined Plaintiff has average intellect, an anxious mood, normal memory, fair judgment, and fair insight. AR 647. Dr. Ariella noted Plaintiff was compliant with her medications and recommended she report to the psychiatry department for medical management at least every 1-3 months for the next six months. AR 649.

The ALJ noted that overall, the findings from the mental health sources failed to show disabling functional limitations. AR 38-39. He observed there were no treating medical sources in the record opining that Plaintiff has disabling symptoms. Rather, the record showed Plaintiff's mental health issues were being managed adequately on an outpatient basis. AR 38, 39, 649. Contradiction with the medical record is a sufficient basis for rejecting a Plaintiff's subjective testimony. *Smartt v. Kijakazi*, 53 F. 489, 499 (9th Cir. 2022) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Batson v. Com'r of Soc. Sec.*, 359 F.3d 1190-1196 (9th Cir. 2004) (ALJ properly relied on medical evidence to discredit Plaintiff's testimony regarding functional limitations). It is not the Court's role to re-evaluate the evidence, even if a re-evaluation may reasonably result in a favorable outcome for the plaintiff. *Batson*, 359 F.3d at 1193. Furthermore, importantly, the ALJ properly considered Plaintiff's mental health symptoms by limiting her to work involving simple, routine tasks, occasional interactions with supervisors or coworkers and no public interaction, as well as restricting her to a habitual and stable work environment in which changes in routine, if any, are gradually introduced. AR 39.

Similarly, with Plaintiff's physical impairments, including asthma and other impairments, the ALJ engaged in a thorough recitation of Plaintiff's medical visits due to

shortness of breath issues, respiratory distress, asthma exacerbation, chest pain, dating from October 24, 2018 all the way through January 13, 2021. AR 36-38. Plaintiff does not to object to or argue that ALJ's characterization of these visits to doctors and emergency rooms were incorrect. After considering all the visits and what occurred at each visit, the ALJ found that they were consistent with imposing "significant restrictions." AR 38. However, they simply were not consistent with the "fully disabling symptoms and limitations" that Plaintiff put forth. *Id.* The ALJ implemented many limitations into Plaintiff's RFC, including limiting her to a range of light work, except occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; no work at unprotected heights or adjacent to dangerous moving machinery; no concentrated exposure to humidity, wetness, extreme cold, extreme heat or to dust, odors, fumes or pulmonary irritants. AR 38. As was true for mental impairments discussed above, contradiction with the medical record is a sufficient basis for rejecting a Plaintiff's subjective testimony. *Smartt*, 53 F. at 499. This is exactly what the ALJ did as well with Plaintiff's physical impairments and the Court finds no error here either.

Finally, the ALJ also considered Plaintiff's obesity in assessing the RFC and symptom testimony. The ALJ found that Plaintiff's records for weight and BMI showed severe obesity that aggravated her asthma and other physical impairments, the medical record itself did not indicate "any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning" from the obesity. AR 39. Thus, the ALJ concluded that the obesity would not factor into Plaintiff's RFC determination. *Id.*

The record does not show Plaintiff would be more functionally limited than what the ALJ determined in his RFC assessment. As such, the ALJ properly discounted Plaintiff's subjective testimony based upon specific, clear, and convincing examples from the mental health and physical health treatment records. As such, the ALJ's decision is supported by substantial evidence and free of legal error.

//

**DISPOSITION**

For the foregoing reasons, the Court finds the Commissioner's final decision is supported by substantial evidence and free of legal error. Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's cross-motion for summary judgment, **AFFIRMS** the decision of the Commissioner and dismisses the action with prejudice. The Clerk of the Court shall enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

Dated: June 20, 2023

Hon. Nita L. Stormes
United States Magistrate Judge